# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| NETLIST, INC., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. 2:25-CV-00557-JRG |
| SAMSUNG ELECTRONICS, CO., LTD., | § | (LEAD CASE) |
| SAMSUNG ELECTRONICS AMERICA, | § | |
| INC., SAMSUNG SEMICONDUCTOR, | § | |
| INC., and AVNET, INC., | § | |
| | § | |
| *Defendants*. | § | |

| | | |
|---|---|---|
| NETLIST, INC., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:25-CV-00558-JRG |
| | § | (MEMBER CASE) |
| MICRON TECHNOLOGY, INC., | § | |
| MICRON SEMICONDUCTOR | § | |
| PRODUCTS INC., MICRON | § | |
| TECHNOLOGY TEXAS LLC, and | § | |
| AVNET, INC., | § | |
| | § | |
| *Defendants*. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the Motion to Dismiss First Amended Complaint pursuant to Federal

Rule of Civil Procedure 12(b)(3) (the "Motion") filed by Defendants Micron Technology, Inc.,

Micron Semiconductor Products, Inc., and Micron Technology Texas, LLC (together, "Micron" or

"the Micron Defendants"). (Dkt. No. 28.)

## I.    BACKGROUND

Plaintiff Netlist, Inc. ("Plaintiff" or "Netlist") filed its initial complaint against the Micron Defendants on May 19, 2025. (Case No. 2:25-cv-00558, Dkt. No. 1.) The member case was consolidated into the above-captioned case on June 27, 2025. (Dkt. No. 10.) Plaintiff filed its First Amended Complaint ("FAC") against the Micron Defendants, and added Defendant Avnet, Inc. ("Avnet") on July 8, 2025. (Dkt. No. 15.) The FAC remains operative between Plaintiff and the Micron Defendants.

The Micron Defendants filed the Motion on July 22, 2025. The Parties moved for an extension of the briefing schedule to accommodate venue discovery (Dkt. No. 34), which the Court granted on July 31, 2025 (Dkt. No. 36). Venue discovery concluded in early February, and the briefing on the Motion resumed on February 17, 2026. (*See* Dkt. No. 151.)

## II.    LEGAL AUTHORITY

A party may move to dismiss an action for "improper venue." Fed. R. Civ. P. 12(b)(3). "Once a defendant raises a 12(b)(3) motion to dismiss for improper venue, the burden of sustaining venue lies with the plaintiff." *ATEN Int'l Co., Ltd. v. Emine Tech. Co., Ltd.*, 261 F.R.D. 112, 120-21 (E.D. Tex. 2009) (cleaned up). A plaintiff may carry its burden by presenting facts, when taken as true, that establish venue. *Id*. The Court "must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff." *Mayfield v. Sallyport Glob. Holdings, Inc.*, No. 6:13-cv-459, 2014 WL 978685, at *1 (E.D. Tex. Mar. 5, 2014) (citing *Ambraco, Inc. v. Bossclip, B.V.*, 570 F.3d 233, 237-38 (5th Cir. 2009)).

"[V]enue facts are to be examined as of the date the suit is filed." *Personal Audio, LLC v. Google, Inc.*, 280 F. Supp. 3d 922, 924 (E.D. Tex. 2017). The Federal Circuit has emphasized that "each case depends on its own facts" and "no one fact is controlling." *In re Cray Inc.*, 871 F.3d

1355, 1362, 1366 (Fed. Cir. 2017). If venue is improper, the Court must dismiss the case, "or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

In an action for patent infringement, 28 U.S.C. § 1400(b) controls venue. Pursuant to 28 U.S.C. § 1400(b), "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." Under the first prong, the Supreme Court held that "a domestic corporation 'resides' only in its State of incorporation for purposes of the patent venue statute." *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1517 (2017). Under the second prong, the Federal Circuit has interpreted a "regular and established place of business" to impose three general requirements: "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017). Failure to satisfy any statutory requirement requires a finding of improper venue. *In re Cray*, 871 F.3d at 1360.

## III.    ANALYSIS

In its opening brief, the Micron Defendants assert that both the initial Complaint and the FAC rely on Micron's "regular and established place of business at 805 Central Expressway South, Suite 100, Allen, Texas 75013… [and] 950 West Bethany Drive, Suite 120, Allen, Texas 75013-3837" despite the fact that "Micron no longer conducts its business in those locations." (Dkt. No. 28 at 3-4, citing Dkt. No. 15 at 3.)[1] To be clear, Micron ceased to conduct business at these locations as a part of relocating to a new facility not within the Eastern District of Texas, but

---

[1] Micron also asserts that the Court should dismiss claims of infringement of the '087 patent against Micron Texas and dismiss Netlist's declaratory judgement claim. (*See generally* Dkt. No. 28.) Since the Court finds that the venue issue is dispositive, it does not consider these additional issues raised by the Motion.

located in the Northern District of Texas. Micron's cessation of business in Allen, Texas was in place when this suit was filed.

Following venue discovery, Plaintiff puts forth four reasons why this Court should find that venue is proper in this District: (1) Micron employees in this District work remotely; (2) Micron still possessed its prior office space in this District at the time of filing; (3) Micron has a regular and established place of business here via its distributor Avnet and its sales agent Ion Associates; and (4) if the previous three arguments fail, the so-called "fallback venue statute" should apply so Plaintiff can bring this case against the Micron Defendants and Avnet together. (*See generally* Dkt. No. 155.)

For the reasons stated below, the Court finds each of these arguments from Plaintiff unavailing and holds that Plaintiff has not met its burden to present facts upon which venue can be established.

### A. Plaintiff Has Not Shown Micron's Hybrid and Remote Employees Can Establish Venue

Plaintiff first asserts that venue is proper in this District due to Micron's remote and hybrid employees who live in EDTX, arguing that Micron has ratified these employees' homes as its regular and established places of business. (Dkt. No. 155 at 9.) Plaintiff makes this assertion on the basis that (1) the Richardson Office in the Northern District of Texas that Micron moved into was not fully ready by the September 2024 goal date, so Micron "created a significant and regular remote work force in the District;" (2) remote and hybrid employees in this District are given company-paid laptops, office equipment (keyboard, mouse, headset, and monitor), phones with data plans, and internet reimbursement; and (3) "Micron's field applications engineer for this District works remotely and is assigned exclusively to this District and its customers because he lives in this District." (*Id*. at 7-9.) Micron responds that there are no special circumstances present

4

in this case which justify overriding the principle that an employee's home is typically not an employer's place of business. (Dkt. No. 157 at 1.)

Plaintiff relies on deposition testimony from Mr. John Becker[2], who stated that as a "rough estimate," there were "roughly 100" cubicles available in Micron's new Richardson Office (*see* Dkt. No. 155 at 7-8, citing Dkt. No. 155-4 at 73:1-75:11), and Ms. Carrie Murphy,[3] who stated that during the 2024 move-out of the previous Allen facility, there was only space for "approximately 110 employees" (*see* Dkt. No. 155 at 7-8, citing Dkt. No. 155-5 at 40:2-14), to show that there was not space for Micron's 176 employees at the Richardson Office (in the Northern District of Texas) many months later, in May 2025. This is based on "rough estimates" and "approximat[ions]" of the status of the office during the move-out period in September 2024, several months before the May 2025 filing date. Such is insufficient to meet Netlist's burden to establish that Micron has "a business model whereby many employees' homes are used… as [its] place of business" under *Cray*, 871 F.3d at 1364 n.1.

Plaintiff next draws attention to 17 remote employees, as well as the fact that all remaining employees in the District operate on a hybrid model at least one day a week. (Dkt. No. 155 at 8, citing Dkt. No. 155-3.) It asserts that because these remote and hybrid employees are given company-paid laptops, office equipment (keyboard, mouse, headset, and monitor), phones with data plans, and internet reimbursement, Micron has established a regular and established place of business by ratifying these employees' homes as places of its business. Plaintiff shines particular light on Mr. Justin Bennett, a field applications engineer for Micron in this District, who works from home and "provides training, technical support, and sales support to local customers (e.g., Raytheon), distributors (Avnet), and sales agents (Ion), in this District from his house and in

---

[2] Director of Global Workplace at Micron
[3] Senior Manager, Global Workplace, Center of Excellence at Micron

person," storing materials necessary to do so on his laptop. (Dkt. No. 155 at 8, citing Dkt. No. 155-6 at 39:6-22, 48:10-50:18, 52:9-12, 53:12-14, 55:15-25.)

These arguments are similarly unavailing. Plaintiff offers no evidence that the Micron Defendants have any property interest in their employees' homes, played a part in selecting their locations,[4] required the employees to store inventory at their homes, condition employment on maintaining a home specifically in this District, or advertising employees' homes as their places of business, as the Federal Circuit considered in *Cray*. 871 F.3d at 1365. Without these stronger ties between the defendant and its employees' homes, the court in *Cray* determined it was insufficient for establishing venue that an employee worked from home and "received reimbursement for his cell phone usage for business purposes [and] internet fees." *Id*. at 1357.[5]

The only other Federal Circuit case Plaintiff cites in its responsive brief is *In re Cordis Corp.*, where, in 1985, the court found venue could be established via home offices wherein the two employees stored "literature, documents, and products" in their homes—one keeping "about $30,000 worth of [defendant's] products in his home office" and the other "usually ha[ving] approximately $60,000 worth of [defendant's] products on hand." 769 F.2d 733, 735 (Fed. Cir. 1985). That case is not comparable to the facts here, where Plaintiff alleges that Micron employees keep in their homes only their computers, phones, and office supplies—the clear majority of which are items in digital form and stored on employee computers. (*See, e.g.*, Dkt. No. 155-6 at 55:15-

---

[4] Plaintiff does assert that Mr. Bennett "is assigned exclusively to this District and its customers because he lives in this District" (Dkt. No. 155 at 8), but in the same paragraph from which Plaintiff selectively quotes from to make that claim, Mr. Bennett goes on to state that "I focus a lot on customers in the Dallas area, Austin area, but I also have customers… in the Rockies and Arizona" (Dkt. No. 155-6 at 17:20-23).

[5] While this Court is bound to follow the precedent set forth by the Federal Circuit in *Cray*, it is clear that *Cray* was decided prior to the world-wide COVID-19 pandemic of 2020-2022, which reordered much of the workplace structure in our nation in a way not known or contemplated when *Cray* was decided. Prior to the pandemic, employees working from home were an exception to the norm of having them work from a centralized brick and mortar workplace, as the *Cray* court envisioned. While *Cray* remains undisturbed, it is challenging to discount such reordering and treat remote work models in the same manner as existed pre-COVID. While the Court looks for future guidance on this issue, it continues to apply *Cray* as it stands.

25.) This Court has recognized that a case "falls closer on [the] spectrum to *Cray* than it does to *Cordis*" where work-from-home employees "maintain computer files from their homes or connect to Nutanix's accused computer platform." *Uniloc USA, Inc. v. Nutanix, Inc.*, 2017 WL 11527109, at *3 (E.D. Tex. Dec. 6, 2017) (internal citations omitted). The Court finds that Plaintiff has not met its burden to show that Micron's employees' homes can, without further guidance from the Federal Circuit, establish venue over Micron in this District.

### B.  Plaintiff Has Not Shown Micron's Bethany Office Can Establish Venue

Plaintiff next asserts that because Micron still had an active lease at its Bethany Office in Allen, Texas at the time of filing this suit, and that the Bethany Office remained furnished, with ready-to-use workstations and equipment, that the Bethany Office can establish venue. (Dkt. No. 155 at 10-11.) Plaintiff asserts that "Micron could have just unlocked the door" and resumed operations there, despite other steps Micron took to move out (such as "remov[ing] signage and networking hardware, update[ing] the website, and disabl[ing] badge readers"). (*Id.* at 11.) Plaintiff argues that "[t]o hold otherwise would allow for clear venue manipulation by temporarily closing an otherwise 'settle[d]' and 'permanent[]' office space to avoid venue." (*Id.*, citing *Cray*, 871 F.3d at 1362-63.)

Plaintiff does not cite (and the Court is not aware of) any cases with similar facts wherein a court held that venue was established over a defendant due to it still holding a lease over a furnished but unoccupied workspace, despite taking concrete steps to disavow the location and ceasing the conduct of business there. While courts reject "ephemeral" venue changes in the transfer context (*see* Dkt. No. 155 at 11 n.7), Netlist makes no such showing that this venue change at the Bethany Office by Micron is "ephemeral." Plaintiff does not dispute that Micron has not conducted business from the Bethany Office since July 2024, in advance of this suit being filed

(*see* Dkt. No. 157 at 4); it merely alleges that Micron *could* have come back and chosen to work there ten months later when suit was filed if it had wanted to. The Court finds that the Bethany Office lacked the required "regular, physical presence of an employee or other agent of the defendant" at the time of filing, *see In re Google LLC*, 949 F.3d 1338, 1345 (Fed. Cir. 2020), and thus cannot be used by Plaintiff to establish venue.

### C. Plaintiff Has Not Shown Micron's Relationships with Avnet and Ion Associates Can Establish Venue

Avnet is a Micron distributor, and Ion Associates ("Ion") is a local sales representative for Micron. (Dkt. No. 155 at 12.) Both Avnet and Ion Associates have a physical office in this District. (*Id.*) Plaintiff asserts that each of these physical offices serve as Micron's regular and established places of business in this District. (*Id.* at 12-16.) Micron responds that neither Avnet nor Ion's places of business in this District have been ratified as places of Micron (under the third *Cray* factor), and that these locations lack the regular physical presence of a Micron employee or agent (under the second *Cray* factor). (Dkt. No. 157 at 4-8.)[6]

Under the third *Cray* factor, "'the regular and established place of business' must be 'the place of the defendant.'" *In re Cray*, 871 F.3d at 1363. To be the place of the defendant, "the defendant must establish or ratify the place of business." *Id.* A court may consider "whether the defendant owns or leases the place"; "exercises other attributes of possession or control over the place"; "[m]arketing or advertisements … but only to the extent they indicate that the defendant itself holds out a place for its business"; "whether the defendant lists the alleged place of business on a website, or in a telephone or other directory"; or whether the defendant "places its name on a sign associated with or on the building itself." *Id.* at 1363-64.

---

[6] The Court notes that Avnet has filed a motion seeking to be severed from this case and stayed pending resolution of the claims against Micron. (*See* Dkt. No. 99.)

Plaintiff's assertions regarding the third *Cray* factor are that Micron "stores its marketing and technical materials and product samples for distribution and sales at [Avnet and Ion's] offices, Micron markets and advertises their locations as its place of business for customers to acquire Micron products, and Micron, in fact, uses these spaces to conduct that same business." (*Id*. at 14 (internal citations omitted).) It further asserts Avnet and Ion's offices are places of Micron because Micron "ratified those locations through directing customers to Avnet and Ion, requiring them to refer to themselves as 'authorized' Micron distributors and representatives, hosting meetings with customers at their offices and visiting on site for training, sales, and roadmaps, and storing products, samples, technical instructions, and marketing materials at their offices for use with Micron's local customers." (*Id*. at 15 (internal citations omitted).) Plaintiff again focuses on Mr. Bennett, Micron's field application engineer, asserting that Micron's customers reach out to Micron, Avnet, and Ion together to set up meetings. (*Id*.)

To assert that "Micron stores its marketing and technical materials and product samples" at Avnet and Ion's in-District offices, Plaintiff relies on a the "Master Distributor Agreement" between Micron and Avnet, which states only that "Micron… shall periodically provide Avnet with reasonable quantities of Micron's advertising and promotional materials, pricing information and technical data… to the extent Micron in its discretion makes such materials generally available to its distributors other than Avnet," (Dkt. No. 155-10 at MCRN-557-98), and the "Distributor Agreement" between Micron and Avnet, which makes a similar representation (Dkt. No. 155-9 at MCRN-55-74). Micron responds that "Netlist cites no evidence that there are any such materials [actually] stored at Avnet's in-District office," and further that "the record shows that Micron's local field applications engineer shares only electronic files with Ion and Avnet." (Dkt. No. 157 at 5, citing Dkt. No. 151-6 at 50:1-52:8, 55:9-14, 56:7-57:15.) Micon further responds that the

9

distribution agreement cited by Plaintiff additionally provides that, for materials sent from Micron to Avnet, title to those products passes to Avnet once shipped. (Dkt. No. 157 at 5, citing Dkt. No. 155-9 at MCRN-557-76.)

Similarly, to assert that "Micron… uses [Avent and Ion's in-District locations] to conduct [its] business" (Dkt. No. 155 at 14), Plaintiff cites testimony from Mr. Bennett that he brings Avnet to meetings with certain clients since they can provide "data sheets or samples," and another quote from Mr. Bennet that Micron "provides samples of its products to Avnet" (Dkt. No. 155-6 at 25:13-21, 38:24-39:1.) Micron responds that this testimony "does not mean that Micron stores its own property at any Avnet location, let alone at an in-District office." (Dkt. No. 157 at 5.)

Plaintiff further cites an exhibit with screenshots showing that Avnet is listed on Micron's website, including Avnet's in-District location, as an "[a]uthorized Micron distributor[]." (Dkt. No. 155-22 at 4.) Ion's in-District location is listed on Micron's website as one of a "Manufacturer Representative." (*Id*. at 3.) Plaintiff cites these pages for its assertion that Micron "direct[s] its customers to Avnet and Ion" (Dkt. No. 155 at 15), but Micron responds that Plaintiff "provides **no** evidence of Micron advertising to customers that they can obtain Micron products from any Avnet or Ion office in this District" (Dkt. No. 157 at 6 (emphasis in original)).

In stating that Avnet and Ion are "requir[ed]… to refer to themselves as 'authorized' Micron distributors and representatives" (Dkt. No. 155 at 15), Plaintiff cites agreements between Micron and Avnet, and Micron and Ion, stating that Avnet "shall have the [non-exclusive] right to indicate to the public that it is an authorized distributor" (Dkt. No. 155-10 at MCRN-557-107; *see also* Dkt. No. 155-9 at MCRN-557-83), and Ion "shall have the non-exclusive right to indicate to the public that it is an authorized independent marketing representative" (Dkt. No. 155-14 at MCRN-557-168). Micron asserts that "Avnet and Ion are not, in fact, required to refer to

10

themselves as 'authorized' by Micron, but are permitted to do so," and that "merely having 'authorized' Avnet and Ion… and let[ting] potential customers know about that business relationship does not mean Micron has 'ratified' their locations as Micron's own." (Dkt. No. 157 at 6.)

Additionally, Micron responds Plaintiff has made no assertion or showing that Micron "possesses, owns, leases, or rents" Avnet or Ion's in-District offices, that Micron "specified" the locations of Avnet or Ion's in-District offices, or that Avnet or Ion "would need permission from [Micron] to move [their offices] outside of the Eastern District of Texas." *See In re ZTE (USA) Inc.*, 890 F.3d 1008, 1015 (Fed. Cir. 2018). Plaintiff further makes no showing that either of these buildings have signage or branding identifying them as locations of Micron—Plaintiff only identifies the representations from Micron's website that Avnet is an "authorized distributor," and Ion is a "manufacturer representative."

On these facts, the Court finds that Plaintiff has not met its burden under the third *Cray* factor to demonstrate that either Avnet or Ion's in-District office is a place **of Micron**.

### D. Plaintiff Has Not Shown the So-Called "Fallback Venue Statute" Can Establish Venue

Plaintiff finally argues, based on a statement from Micron in briefing for a different action, that there "is no venue where Micron and Avnet can be sued together under the patent venue statute," such that there is a "venue gap" to which 28 U.S.C. § 1391(b)(3) should apply to establish venue in this case. (Dkt. No. 155 at 16-17.) Micron responds that § 1391 is a general venue statute which does not apply to Plaintiff's patent claims in this case. (Dkt. No. 157 at 9.)

This Court has previously established that "28 U.S.C. § 1400(b) is the 'sole and exclusive provision controlling venue in patent infringement actions' and is not supplemented by the general venue statutes." *MyChoice LLC v. Taiv, Inc.*, 2025 WL 899316, at *1 (E.D. Tex. Mar. 24, 2025)

11

(quoting *TC Heartland*, 581 U.S. at 266). Strangely, Plaintiff's cited cases involve unique venue concerns that arise exclusively in suits with "**foreign corporations**… us[ing] § 1400(b) as a shield against suit in a particular district court," which is not the issue before this Court. *See, e.g., In re HTC Corp.*, 889 F.3d 1349, 1357-57 (Fed. Cir. 2018) (emphasis added) (referring to unique issues arising in suits against foreign defendants as the "alien-venue rule"). Accordingly, Plaintiff's invocation of § 1391 in this case is unavailing.

### E.  Transfer

If venue is improper, the Court must dismiss the case, "or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Micron argues that "the interests of justice favor dismissal, not transfer, because cases are pending in the District of Delaware between Micron and Netlist over both the '087 and '731 patents," and there is no risk Plaintiff will face a statute of limitations or forfeiture of its rights as a result of dismissal. (Dkt. No. 28 at 10.) Plaintiff does not respond to this argument in its responsive brief or otherwise address whether it asserts this case should be transferred versus dismissed. (*See generally* Dkt. No. 155.)

While the above analysis points to the result that, under these facts, venue is not proper within this District, the Court is bound to consider the interests of justice. Having done so, the Court is persuaded that the interests of justice dictate that rather than dismissal, this action should be transferred to the District of Delaware, which is familiar with these parties, their counsel, and their claims. The District of Delaware is a district where this action could have properly been brought initially.

## IV.    CONCLUSION

For the reasons stated herein, Micron's Motion (Dkt. No. 28) is **GRANTED**, and the above-captioned Member Case No. 2:25-cv-00558-JRG is **TRANSFERRED** to the District of Delaware. All requests for relief between the Micron Defendants and Plaintiff not expressly granted herein are **DENIED AS MOOT**.[7] To facilitate transfer, this Member Case and Lead Case No. 2:25-cv-00557 are deconsolidated. The Clerk is **ORDERED** to transfer this case as set forth above, *instanter*.

**So ORDERED and SIGNED this 6th day of March, 2026.**

_____
RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE

---

[7] Avnet's Opposed Motion to Sever and Stay (Dkt. No. 99) remains in place and should be considered by the Transferee Court.

13